IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NASRIN MOHAMMADI<br>c/o Freedom Watch, Inc.<br>9701 Wilshire Blvd., Suite 900<br>Beverly Hills, CA 90212<br>And Other Class Members<br><br>　　　　　　Lead Plaintiff,<br><br>　　　v.<br><br>ISLAMIC REPUBLIC OF IRAN<br>c/o Manouchehr Mottaki<br>Foreign Minister of Iran<br>Ministry of Foreign Affairs<br>Imam Khomeini Square, Tehran, Iran<br><br>and<br><br>MAHMOUD AHMADINEJAD<br>c/o President's Office<br>Pasteur Avenue<br>Postal Office 1423-13185<br>Tehran, Iran 13168-43311<br><br>and<br><br>AYATOLLAH SAYID ALI<br>HOSEYNI KHAMENEI<br>c/o Manouchehr Mottaki<br>Foreign Minister of Iran<br>Ministry of Foreign Affairs<br>Imam Khomeini Square, Tehran, Iran<br><br>and<br><br>ARMY OF THE GUARDIANS OF THE<br>ISLAMIC REVOLUTION<br>c/o Manouchehr Mottaki<br>Foreign Minister of Iran<br>Ministry of Foreign Affairs<br>Imam Khomeini Square, Tehran, Iran | Civil Case No.<br><br>CLASS ACTION COMPLAINT<br>UNDER THE ALIEN TORT<br>CLAIMS ACT |

              Defendants.       )
                                        )

## I. INTRODUCTION

1. This is a class action seeking damages for assault, supporting terrorism, crimes against humanity, violations of civil and human rights, torture of decedents of Lead Plaintiff and Members of the Class, committed by Defendants and their agents, and also acting in concert with, aiding, abetting, facilitating, soliciting, directing, orchestrating and conspiring with the Defendant Army of the Guardians of the Islamic Revolution, commonly referred to as the Iranian Revolutionary Guard Corps ("IRGC"), Al Qaeda and the Taliban, and other terrorist groups, nation states and their collaborators in those atrocities, in violation of the Law of Nations, international law, the laws of the United States of America and of individual states, including but not limited to the District of Columbia, and the natural laws of man.

## II. PARTIES

2. Plaintiff Nasrin Mohammadi ("Mohammadi") was born in Iran and is now a resident of the United States. She lived in Iran during the time of the crimes alleged in this complaint and has had her brother killed by the Defendants. She currently resides in Los Angeles County, California.

3. Defendant Islamic Republic of Iran ("Iran") was established on April 1, 1979, when the former leader, Shah Mohammad Reza Pahlavi, was overthrown in a coup. Under then Supreme Leader Ayatollah Khomenei and then subsequently under the current Supreme Leader, Defendant Khamenei, the Islamic Republic of Iran (Iran) has historically been a regime that has used force, fear, torture, and murder and other violations of human rights in order to prop up its autocratic regime and to ensure that the laws of Sharia are imposed upon its unwilling people.

2
**CLASS ACTION COMPLAINT UNDER THE ALIEN TORT CLAIMS ACT**

Furthermore, Iran frequently defies international law and jeopardizes world peace by furthering terrorism and illegally pursuing its nuclear ambitions in its quest to acquire nuclear weapons capabilities.

4. Defendant Mahmoud Ahmadinejad ("Ahmadinejad") is and has been the President of Iran since 2005. Prior to being "elected" as president, he was a volunteer member of the Basiji militia movement and has been actively engaged in rousing anti-American and anti-Western sentiments among the Iranian people. Many persons have identified him as a "ringleader" of the infamous Iranian hostage crisis which occurred during the U.S. administration of President Jimmy Carter, where officials of the American Embassy in Tehran were held hostage for over a year. He is believed to be mentally unstable if not insane, and has denied publicly the established historical event of the Holocaust, which ironically he is carrying out of sorts on his own people through the use of intimidation, torture and mass murder. Upon information and belief, he presently resides in Tehran, Iran.

5. Defendant Ayatollah Sayyid Ali Hoseyni Khāmene'i ("Khamenei") is the highest ranking leader in Iran and is commonly referred to as the "Supreme Leader" in which capacity he has served since 1989. He was the protégé of the mastermind of the 1970 revolutionary movement, Ayatollah Khomeini, which saw the overthrow of the Shah and led to the current Islamist state in present-day Iran. He controls the Iranian military, the Defendant IRGC, and all of the other tools of insidious force and subjugation of the Iranian people that enable him to keep his grip on power in Iran. Upon information and belief, he presently resides in Tehran, Iran.

6. Defendant Army of the Guardians of the Islamic Revolution ("IRGC") is a military group, supported and controlled by the Iranian government, including Defendants Khomenei and Ahmadinejad. The IRGC was established in 1979, after the Islamic Revolution, and since then

has engaged in a multitude of terrorist activities against the Iranian people as well as against foreign military and civilian targets, at the direction of Defendants Ahmadinejad and Khamenei. The IRGC was branded as a terrorist group by the U.S. State Department in 2007 and continues to promote terrorist activities to this day. The group is headquartered in Tehran, Iran.

7.	This class action is brought by the lead plaintiff on behalf of all Iranians who have had their civil and human rights violated, been assaulted, battered, tortured and even murdered to keep a vicious, illegitimate and inhuman radical regime in power, all at the expense of the great, courageous, pro-Western, extremely well educated and highly sophisticated Persian civilization and its people who have a history of living in freedom and want to be free from repression and violation of basic human rights once again.

### III. JURISDICTION AND VENUE

8.	The Court has subject matter jurisdiction over this case under the Alien Tort Claims Act (ATCA) 28 U.S.C. § 1350 and the Torture Victim Protection Act of 1991 (TVPA) 28 U.S.C. § 1350, note,§ 2(a) and 28 U.S.C. § 1331 (Federal Question Jurisdiction), and 28 U.S.C. § 1332 (diversity jurisdiction). Plaintiffs also invoke the supplemental jurisdiction of this Court with respect to claims based upon the laws of the District of Columbia, pursuant to 28 U.S.C. § 1367. This is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and other applicable federal statutes and rules.

9.	Defendants Ahmadinejad and Khamenei are subject to suit in the courts of the United States pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 et seq., because its conduct falls within the exceptions to foreign sovereign immunity set forth in 28 U.S.C. §§ 1605(a)(5) and 1605(a)(7).

10.     The amount in controversy, both individually and collectively, well exceeds Ten Trillion U.S. Dollars.

## IV. FACTUAL BACKGROUND

11.     Defendant Khamenei, currently the Supreme Leader of Iran, first rose to worldwide prominence in 1979 when he was the protégé of the mastermind of the Iranian Revolution, Ayatollah Khomeini, which led to the overthrow of the Shah, the hostage-taking and eventual expulsion of all American and Western nationals, and the rise of the radical and anti-western Islamic fundamentalism that has become widespread throughout Iran and the rest of the region.

12.     Defendant Khamenei over the past 25 years has used various worldwide terrorist groups such as Hezbollah, Al Qaeda, Defendant IRGC, and others, all officially designated as 'terrorist organizations' by the U.S. State Department, to initiate campaigns of violence against the Iranian people and Western individuals, companies, and interests both in with Iran, and elsewhere in the region. He has been the motivating force for terrorist groups across the region and has assumed the primary leadership role for such groups as his regime has provided for the funding, training, equipping, and mobilizing of terrorist groups, and has helped to orchestrate attacks on Western individuals, governments and interests. His disdain for his own people and America and her allies has been evident in his speeches over the years, particularly when he is leading "death to America" chants for his religious followers. All of those Iranians disagreeing with his regime and who speak out on their opinions are branded Western sympathizers and are subjected to brutal punishments, including public floggings, imprisonment without charge, solitary confinement, torture, and even death. These punishments are handed out without remorse or

segregation, to women, children, the elderly, or whoever else may be deemed to be at risk to the absolute grip on power of Khamenei.

13.     Plaintiff Mohammadi's brother, Akbar Mohammadi ("Akbar"), was a student of the University of Tehran, and was an outspoken critic of the Iranian regime during his tenure at the University. In 1999, Akbar was actively involved as a leader in the student protests that were taking place, that were motivated by the closure of a reformist newspaper and what was perceived to be an authoritarian government usurping freedoms. The protests were non-violent, but this did not stop the Iranian police and government agents from using violence and force to disperse and punish the protesters. During the demonstrations, Akbar was taken into custody, and locked away in Evin Prison in Tehran, a place notorious for its cruel imprisonment of political dissidents.

14.     While in prison, Akbar was subjected to repeated bouts of torture and cruel and unusual forms of punishment, causing him to go deaf, and be in a constant state of agony. He was placed in solitary confinement for long stretches of time, subjected to extreme conditions, and brutal beatings, all of which seriously damaged him both physically and psychologically. As a result of his deteriorating physical condition, it was recommended by doctors that he be transferred to other countries for treatment, under the laws of Iran, but this request was denied. He was instead "treated" in Tehran in 2005 and lived but his physical condition was constantly deteriorating. He was prescribed numerous medications, which he had to take daily, but when he was readmitted into Evin prison, he was denied the use of these medications, further causing him pain, more severe physical damage and emotional distress. Finally on July 31st, 2006, Akbar was murdered in Evin prison during a torture session, his long grueling prison term mercilessly ended by the regime.

**CLASS ACTION COMPLAINT UNDER THE ALIEN TORT CLAIMS ACT**

15. During Akbar's imprisonment, he had been in contact with family members including the lead Plaintiff, and had written letters to them on a regular basis. They were able to experience his account firsthand through visits with him and communications back and forth. Lead Plaintiff Mohammadi has seen the entire episode unfold from her brother's days at Tehran University in 1999 to his death in July, 2006 and has been a witness to the brutality that was inflicted upon her brother Akbar.

16. The Defendants were directly responsible for the torture and death of Akbar and other political prisoners at Evin and elsewhere because the prison guards and other agents of the government were acting on direct orders from the Defendants and were carrying out their official policies of repression, brutality, torture, intimidation, and murder upon those who they deemed to be enemies of their tyrannical government, such as Akbar.

17. Another example of the callous disregard for human life and the skewed vision of morality of Khamenei is evidenced by the recent execution of Atefa Sahaaleh, a 16-year old mentally ill schoolgirl who was murdered for having pre-marital relations with a 51-year old man. The man has yet to be charged with anything.

18. Defendant Ahmadinejad has been the President of Iran since 2005 and recently claims to have been re-elected in a fraudulent election that has been criticized worldwide for being a sham, where voter fraud was rampant and corruption was the norm.

19. Defendant Ahmadinejad espouses the same worldview as Defendant Khamenei and was handpicked by him for the role of the Presidency for this reason. He has carried out the orders of Khamenei and added his own brutal twist, using the IRGC to commit acts of terror in Iraq and elsewhere in an effort to harm his own people and destabilize the region and to increase the authority and standing of Iran among its regional peers.

20.     The Defendants have acted in concert to repress all dissent, using brutal police and military tactics, and maintaining their tight grip on power through fear, repression, and ultimately voter fraud and the manipulation of elections, as evidenced by the recent events that have led to widespread protesting and unfortunately government crackdowns in the form of beatings, intimidation and murder, as well as a denial of freedom of the press.

## COUNT I
### (Engaging in Terrorism and/or Providing Material Support to a Terrorist Organization – Each and Every Defendant)

21.     Lead Plaintiff and members of the Victims of Terrorism Class repeat and reallege all of the previous allegations in paragraphs 1 through 28 of the complaint with the same force and effect as if fully set forth again at length.

22.     The Defendant IRGC, Al Qaeda, and Hezbollah are all terrorist organizations, having been so designated by the U.S. State Department, as hereinabove alleged.

23.     That heretofore and at the time of the occurrences herein, Defendants, acting individually and in concert with Al Qaeda, and Hezbollah and other terrorist groups and nation states, were engaged in terrorism and violations of human and civil rights in violation of the law of nations, international law and of individual countries and states in that inter alia it engaged in violent acts, or acts dangerous to human life that were intended to intimidate or coerce a civilian population, and/or to influence the policy of a government and its people by intimidation or coercion and genocide; and/or to affect the conduct of a states in that inter alia it engaged in violent acts, or acts dangerous to human life that were intended to intimidate or coerce a civilian population, and/or to influence the policy of a government by intimidation or coercion and genocide; and/or to affect the conduct of a government by mass destruction, assassination, kidnapping or hostage taking, and other tortious acts as defined by 31 CFR § 594.311 and

Chapter 113B of Part I of Title 18 of the United States Code; engaged in criminal acts intended and/or calculated to create a state of terror in the minds of particular persons or a group of persons or the general public as defined in the League of Nations Convention (1937) and the General Assembly Resolution 51/210 (1999) wherein such acts are strongly condemned; and/or engaged in crimes against a civilian population intended to cause death or serious bodily harm to civilians or non-combatants with the purpose of intimidating a population in violation of UN Resolution May 17, 2005 and UN General Assembly Resolution 49/60 of December 9, 1994 adopting the Declaration of Measures to Eliminate International Terrorism and all other citations therein condemning terrorism which are hereby incorporated by reference; and UN General Assembly Resolution 42/159 (adopted December 7, 1987) and other international laws and jus cogens as set forth herein and elsewhere.

24.  That terrorism is a violation of the law of nations and international law.

25.  That conspiring with and aiding, abetting, facilitating, soliciting and giving material aid to a terrorist organization is a violation of the law of nations.

26.  That heretofore and at the time of the occurrences herein, Defendants, acting individually and in concert with the terrorist organizations Al Qaeda, Hezbollah, and other terrorist groups and nation states were engaged in committing violent activities, including, but not limited to coercive death threats, murder, forced disappearances, drug trafficking, extortion and kidnapping, including but not limited to the murders of the plaintiffs' decedents and others.

27.  As heretofore alleged, Defendants, directly and by and through their agents, have provided substantial support to an assortment of terrorist organizations which have then carried out vicious acts against both civilians and military targets, to inflict the maximum amount of damage, with little regard for human life. This support has been in the form of direct payments,

training, equipping, and mobilizing, and the direct result of this support has been torture, murder, and crimes against humanity and genocide.

28. At all times material hereto, the Defendants knew or should have known that its providing money, guns, ammunition, war material and other forms of aid to Al Qaeda, Hezbollah, and other terrorist groups and nation states would facilitate, aid and abet the commission of murders, forced disappearances, kidnapping and other crimes, including the murders of the Plaintiffs decedents.

29. As a result of providing financial support to Al Qaeda, Hezbollah, and other terrorist groups and nation states the Defendants violated the law of nations, established United States laws, international laws, treaties and norms, including, but not limited to those sections previously set forth including but not limited to:

The Declaration on Measures to Eliminate International Terrorism and citations therein incorporated by reference adopted by the United Nations General Assembly on December 9, 1994 (GA Res. 49/60); The Anti Terror Act, 18 U.S.CC. 113B;

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996);

The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act"), Pub. L. No. 107-56, 115 Stat. 271 (2001);

The Convention on the Prevention and Punishment of the Crime of Genocide; Art. 2, Dec. 9, 1948, 78 U.N.T.S.;

International Convention for the Suppression of Terrorist Bombings, G.A. Res. 52-164, 1, U.N. Doc A/RES/52/164;

International Convention for the Suppression of the Financing of Terrorism, 39 I.L.M. 270 (Dec. 9, 1997); G.A. Res. 54/109, 1 UN Doc A/RES/54/109 (Dec 1, 1999) and ratified by over 130 countries (The Financing Convention);

United Nations Charter, 59 Stat. 1031, 3 Bevans 1153 (1945);

(Universal Declaration of Human Rights, G.A. Res. 217A (iii), U.N. Doc. A/810 (1948);

International Covenant on Civil and Political Rights, G.A. Res. 2220A(xxi), 21 U.N. Doc., GAOR Supp. (No. 16) at 52, U.N. Doc. (A/6316 (1966);

Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 39/46, 39 U.N. Doc., GAOR Supp. (No. 51) at 1100, U.N. doc. A/39/51 (1984);

Declaration on the Protection of all Persons From Being Subjected to Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 3452, 30 U.N. Doc., GAOR Supp. (No. 34) at 91, U.N. Doc. A/10034 (1976);

Common Article 3 of the 1949 Geneva Conventions; Articles 4 and 13 of the 1977 Geneva Protocol II;

Convention on Combating Bribery of Foreign Public Officials in International Business Transactions, 37 I.L.M. 1 (Dec. 18, 1997);

and other jus cogens.

30.     The coercive threats and/or murders of the Class of Plaintiffs' decedents and/or injuries to Plaintiff(s) were a direct and proximate result of the Defendants conspiring with and providing aid to a terrorist organizations, and through their individual and government acts, as hereinabove alleged, jointly and severally.

31.     The abuses described above were premeditated, politically-motivated acts of violence committed against noncombatant civilians for the purpose of instilling fear, targeting political opponents, and generally terrorizing a civilian population to further their radical and perverted Islamist agenda and to retain their grip on power in Iranian government.

32.     Defendants are liable to Plaintiffs in that they aided and abetted, directed, ordered, requested, paid, were reckless in dealing with, participated in a joint criminal enterprise with, confirmed, ratified, and/or conspired with the Al Qaeda, Hezbollah, and other terrorist groups and nation states in bringing about and perpetrating the acts of terrorism against lead Plaintiff and other Members of the Class.

33.     The murderous and other tortious acts of terrorism and violations of human rights and other torts against the lead Plaintiff and other Members of the Class were made possible and even advocated by the Defendants' inhuman and barbaric behavior hereinabove alleged and their own individual and government official acts.

34.     That the Defendants and their agents knowingly and substantially assisted Al Qaeda, Hezbollah, and other terrorist groups and nation states and their collaborators to commit acts that violate clearly established international law norms, and (b) facilitated the commission of international law violations by providing these terrorist groups and their collaborators with the tools, instrumentalities, or services to commit those violations with actual or constructive knowledge that those tools, instrumentalities, or services would be (or only could be) used in connection with that purpose.

35.     That by reason of the wrongful conduct of the Defendants, each and every one of them, jointly and severally, including aid to a terrorist organizations and nation states as hereinabove alleged and the consequent crimes and torts committed thereby, as hereinabove alleged, lead

Plaintiff, other Members of the Class and any of their decedents suffered conscious pain, suffering and death, and the lead Plaintiff, and other Members of the Class have suffered pecuniary and economic damages, loss of support, loss of nurture care and guidance, grief, anguish, loss of society, loss of services and other mental and physical injuries, and accordingly, the lead Plaintiff and other Members of the Class claim all damages allowed by law, including compensatory and punitive damages in excess of Ten Trillion USD.

## COUNT II
### (Assault and Battery– Each and Every Defendant)

36. Lead Plaintiff and Members of the Class repeat and reallege all of the allegations of paragraphs 1 through 48 of the complaint with the same force and effect as if fully set forth again at length.

37. As a direct and proximate result, Lead Plaintiff Mohammadi and other Members of the Class have suffered substantial damages including, but not limited to, physical harm, death, and emotional distress, anxiety, fear and apprehension.

## COUNT III
### (Intentional Infliction of Emotional Distress
### Each and Every Defendant

38. Lead Plaintiff Mohammadi and other Members of the Class repeat and reallege all of the previous allegations of the complaint in paragraphs 1 through 50 with the same force and effect as if fully set forth again herein.

39. The Defendants' actions, as described in the foregoing paragraphs, were intentional, extreme, outrageous and intolerable and created a fear of serious bodily injury and death. Lead Plaintiff Mohammadi's brother Akbar was murdered by the Defendants and this intentional act

caused enormous emotional distress up to the Plaintiff and other Members of the Class similarly situated.

40. The Defendants' conduct was the sole proximate cause of the severe and continuing emotional distress that has been suffered by Lead Plaintiff Mohammadi and other Members of the Class, who have experienced similar human rights violations, torture, maybe, false arrests, murder, genocide and loss of freedom. As a direct and proximate result of the intentional, reckless, outrageous and intolerable conduct of the Defendants, each and every one of them, jointly and severally, lead Plaintiff and other Members of the Class have suffered substantial damages including, but not limited to, severe emotional distress, mental anguish, intense fear and anxiety, and other physical manifestations of emotional distress, such as loss of sleep, back pain, migraine headaches, heart ailments, loss of self esteem, nervousness, anxiety, companionship, consortium and other manifestations of physical and emotional distress. Claimed damages well exceed Ten Trillion USD for lead Plaintiff and other Members of the Class.

## COUNT IV
## (Wrongful Death
## Each and Every Defendant)

41. Lead Plaintiff Mohammadi and other Members of the Class repeat and reallege all of the previous allegations of the complaint in paragraphs 1 through 53 with the same force and effect as if fully set forth again herein.

42. The Defendants, each and every one of them, jointly and severally, were responsible for the death of Akbar Mohammadi, and others in the Member Class, as Defendants Khamenei and Ahmadinejad gave specific instructions on how to falsely arrest, convict, terrorize, torture, and kill Iranian citizens who did not obey orders and who instead chose to peacefully assemble, a right not often recognized by the Defendants. When Akbar was taken into custody, it was the

Defendants who gave the orders on how to treat political prisoners, including orders to torture and to maim and kill, in their plan of carrying out genocide against their own citizens who questioned their radical and perverted rendition of Islam. As a direct result of these orders given by the Defendants, Akbar died a premature death in Evin prison, a political prisoner, defiant to the end against an autocratic and unjust regime.

WHEREFORE, on all counts herein, Lead Plaintiff and other Members of Class demand judgment in their favor and against the Defendants, each and every one of them, jointly and severally, for compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees, costs and such other relief as this Court deems just and proper in an amount in excess of Ten Billion USD.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of any and all issues herein triable of right by a jury.

**FREEDOM WATCH, INC.**
9701 Wilshire Blvd.
Los Angeles, CA
Tel: 310-651-3026
Fax: 310-651-3025

LARRY KLAYMAN, ESQ.
D.C. Bar No. 334581
General Counsel and Chairman
Counsel for Lead Plaintiff and Other
Members of the Class